| | |
|---|---|
| **BFI WASTE SYSTEMS OF NEW JERSEY, INC.,**<br><br>      **Plaintiff,**<br><br>      v.<br><br>**TOWNSHIP OF MONROE, MIDDLESEX COUNTY, NEW JERSEY,**<br><br>      **Defendant.** | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br><br>Civil Action No. 23-0059 (RK) (JTQ)<br><br>MEMORANDUM AND ORDER |

This matter arises from a dispute between Plaintiff, BFI Waste Systems of New Jersey, Inc. ("BFI"), and Defendant, Township of Monroe ("Monroe"), concerning post-closure maintenance and leachate management at a former municipal landfill. BFI moves to compel the deposition of Monroe's Mayor Stephen Dalina, asserting that his testimony is necessary to address critical issues in the case. Monroe opposes the motion, arguing that Plaintiff has not shown extraordinary circumstances justifying the deposition of a high-ranking government official. The Court has carefully considered the parties' submissions, and, for the reasons below, BFI's motion is granted.

I. Background

    A. Allegations in the Complaint

The Monroe Township Landfill ("Landfill") is a closed municipal landfill. According to the Complaint, the Landfill was established by Monroe in the 1950s and was directly operated by the Township until 1968. ECF No. 1 ¶¶ 14, 16. Thereafter, BFI, through its predecessor, operated the Landfill under a contract with Monroe. *Id.*

¶ 17. The Landfill ceased active operations in 1978, after which environmental issues, including leachate seepage into nearby neighborhoods, prompted legal action by the New Jersey Department of Environmental Protection ("NJDEP"). *Id.* ¶¶ 18, 20-21. BFI was required to undertake substantial remediation measures, including constructing leachate containment systems and capping the landfill. *Id.* ¶¶ 22, 24-25. By 1983, the Landfill was listed as a Superfund site, and BFI continued post-closure maintenance. *Id.* ¶¶ 27, 52. BFI alleges it has spent over $30 million on these activities, *id.* ¶ 6, that Monroe failed to share in these costs, and that Monroe violated agreements governing maintenance and leachate disposal. *Id.* ¶¶ 4, 56, 65, 99.

According to BFI, in 2020, Monroe blocked BFI's longstanding use of municipal sewers for leachate disposal, citing odor complaints, despite an agreement between the parties, as well as regulatory approvals, allowing for such disposal. *Id.* ¶¶ 4, 79-80. BFI asserts that Monroe failed to investigate the odor's cause and forced BFI to adopt costly emergency measures. *Id.* ¶¶ 85-86, 91. Public statements by Monroe's mayor expressed opposition to reintroducing leachate from the Landfill under any circumstances. *Id.* at ¶ 100. According to Plaintiff, Monroe is also constructing a new force main pipeline for Landfill leachate at significant cost that it intends to charge to BFI, which Plaintiff alleges is contrary to contractual and statutory provisions. *Id.* ¶¶ 104, 107, 109-110.

In this action, BFI claims that Monroe breached contractual agreements by failing to reimburse maintenance costs, refusing to budget for required activities, and blocking BFI's use of the municipal sewer system for leachate disposal. BFI alleges

that Monroe's actions violate federal and state environmental laws, including CERCLA and New Jersey's Spill Act. It further asserts that Monroe acted in bad faith, ignored its statutory and contractual obligations, and failed to share in the financial burdens of maintaining and remediating the Landfill, forcing BFI to incur over $30 million in costs. BFI seeks damages, declaratory relief, and to recover the significant expenses it has incurred.

In response to the Complaint, Monroe admits general facts about the ownership of the Landfill, its historical operations, and the force main project. It denies, however, BFI's allegations regarding statutory violations, contractual breaches, and Monroe's responsibility for increased costs, as well as allegations relating to BFI's alleged right to use the sewer indefinitely.

B. BFI's Attempt to Depose Mayor Dalina

On May 30, 2024, BFI noticed the deposition of Mayor Dalina for July 8, 2024, triggering a joint submission to the Court. In that joint letter, Monroe advised that it could not "provide a precise date for Mayor Dalina's deposition but has requested that the parties speak to their respective clients and work cooperatively to exchange proposed dates" and, further, that it was "working to schedule the . . . deposition of Mayor Dalina as proposed." ECF No. 31. However, a short time later, on July 8, 2024, Monroe asked the Court for leave to file a motion for a protective order to prevent the Mayor's deposition. ECF No. 34. In response, the Court directed the parties to proceed with the scheduled depositions of other Township officials (specifically, Monroe's Business Administrator, Senior Vice President of Defendant's Engineer, and

Executive Director of Defendant's Utility Department), and further directed that, if Plaintiff still believed deposing the Mayor was necessary after taking the depositions of these officials, Plaintiff could seek appropriate relief from the Court. ECF No. 35. The depositions of the Township officials were taken, and this motion followed.

II. Legal Standard & The *Morgan* Doctrine

Under the Federal Rules of Civil Procedure, the scope of discovery is broad. Rule 26 permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense," although a Court may limit discovery where, for example, it is not proportional to the needs of the case or if the burden or expense of the proposed discovery outweighs it benefits. Fed. R. Civ. P. 26(b)(1). A court will also restrict discovery that "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2).

In the present case, Monroe argues that the deposition Mayor Dalina is prohibited by the "*Morgan* doctrine," under which courts "balance the need for broad discovery with the need to protect high-ranking government officials from nettlesome deposition taking." *United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 321 (D.N.J. 2009). The doctrine is derived from *United States v. Morgan*, 313 U.S. 409, 422 (1941), which established the principle that high-ranking government officials should not be compelled to testify about their discretionary decision-making processes.

In *Morgan*, the Supreme Court ruled that the Secretary of Agriculture—who

- 4 -

had previously conducted quasi-judicial proceedings in connection with certain rate settings—should not be required to testify about his mental deliberations. 313 U.S. 421-22. The Court found such an inquiry would be as improper as an examination to that into deliberative process of a judge. *Morgan*, 313 U.S. at 422 ("Just as a judge cannot be subjected to such a scrutiny, . . . so the integrity of the administrative process must be equally respected.").

Since the *Morgan* decision, the doctrine has continued to develop through the federal common law. In its simplest terms, the doctrine stands for the proposition that "high-ranking government officials should not be subject to the taking of depositions absent extraordinary circumstances." *Sensient Colors, Inc.*, 649 F. Supp. 2d at 316. But who qualifies as such an official and what constitutes extraordinary circumstances has been the subject of much judicial writing, with courts articulating different rationales for the doctrine, including protecting the decision-making process of officials, ensuring officials are able to perform their official tasks without disruption, and avoiding discouraging qualified individuals from entering public service. *Id.*

The Third Circuit has not directly addressed the *Morgan* doctrine in the context of an elected official,[1] but its sister courts have, as have courts within this District, all of which provide helpful guidance here.

---

[1] The Third Circuit has, however, recognized the applicability of *Morgan* to municipal court judges and administrative law judges. *See Batiz v. Brown*, 676 F. App'x 138, 143 (3d Cir. 2017) (citing *Morgan* and observing that direct evidence from a municipal court judge would not be discoverable); *Grant v. Shalala*, 989 F.2d 1332, 1344 (3d Cir. 1993) (stating that "efforts to probe the mind of an ALJ, if allowed, would pose a substantial threat to the administrative process").

For example, in *Bogan v. City of Boston*, a case where plaintiffs sought the deposition of the Mayor of Boston, the First Circuit noted that

> [t]he need for limited access to high government officials through the discovery process is well established. In *United States v. Morgan*, 313 U.S. 409, 422, 61 S. Ct. 999, 85 L. Ed. 1429 (1941), the Supreme Court indicated that the practice of calling high ranking government officials as witnesses should be discouraged. Relying on *Morgan*, other courts have concluded that top executive department officials should not, absent extraordinary circumstances, be called to testify or deposed regarding their reasons for taking official action. This rule is based on the notion that '[h]igh ranking government officials have greater duties and time constraints than other witnesses' and that, without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation.

489 F.3d 417, 423 (1st Cir. 2007) (citations omitted). The parties in *Bogan* agreed that the Mayor of Boston was a high-ranking government official and "not subject to being deposed absent a demonstrated need." *Id.* As such, the question for the court was "whether the [plaintiffs] established sufficient need to warrant discovery directly from the Mayor." *Id.* In affirming the entry of a protective order preventing the deposition, the court pointed out that the plaintiffs failed to pursue "other sources to obtain relevant information before turning to the Mayor," such as other city employees that "could have shed light on the Mayor's involvement." *Id.* at 424.

The Second Circuit faced a similar issue in *Lederman v. New York City Dep't of Parks & Recreation*. There, the Court of Appeals addressed whether "the District Court erred by issuing a protective order in response to [a] request to depose" the Mayor and former Deputy Mayor of New York City. The Second Circuit explained that "to depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition—for example, that the official has

- 6 -

unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means." *Lederman v. New York City Dep't of Parks & Recreation,* 731 F.3d 199, 203 (2d Cir. 2013). The Court had little trouble concluding that "plaintiffs did not demonstrate exceptional circumstances," and neither "identif[ied] with particularity the information they needed" nor showed how these individuals "had first-hand knowledge about the litigated claims." *Id.* Consequently, the Second Circuit upheld the trial court's decision barring the depositions, thus preventing the officials from wasting "an inordinate amount of time tending to pending litigation." *Id.* (citing *Bogan*, 489 F.3d at 423).

*Buono v. City of Newark* is likewise instructive. 249 F.R.D. 469 (D.N.J. 2008). In *Buono*, then Magistrate Judge Shwartz outlined a five-part test to determine whether extraordinary circumstances exist to permit the deposition of a high-level government official. Specifically, a party seeking such a deposition must show: (1) that the official's testimony is necessary to obtain relevant information that is not available from another source; (2) the official has first-hand information that could not be reasonably obtained from other sources; (3) the testimony is essential to that party's case; (4) the deposition would not significantly interfere with the ability of the official to perform his government duties; and (5) that the evidence sought is not available through any alternative source or less burdensome means. *Buono*, 249 F.R.D. at 471 n.2. Magistrate Judge Shwartz concluded that the plaintiff had not shown exceptional circumstances because "there [wa]s no allegation that the

deponent played any role in the events about which plaintiff complains" and there was "nothing to show that the deponent ha[d] personal knowledge." *Id.* This doomed plaintiff's request.

Recently, Magistrate Judge Espinosa addressed a motion seeking a protective order barring the deposition of the Mayor of Newark. *See Stevenson v. City of Newark*, 2024 WL 1526102, at *1 (D.N.J. Apr. 9, 2024). Evaluating the five *Buono* factors, the court found that the plaintiff had met her burden of demonstrating that extraordinary circumstances existed to overcome the *Morgan* doctrine's presumption against deposing high-ranking officials. In particular, the court noted that while there was "no 'smoking gun' evidence that Mayor Baraka directed or played an active role in any of the conduct giving rise to Plaintiff's claims," the record "also does not place him so far out on the periphery of events that the Court can confidently conclude there is no need for his deposition." *Id.* at *9. The Court permitted the deposition to proceed, but recognizing that "the Mayor of New Jersey's largest city is continuously busy with important duties", the court limited the deposition in time (two and one half hours) and scope (unlawful workplace conduct by senior level employees in the Mayor's administration).

III. Analysis

    A. <u>Whether Mayor Dalina iesAs A High-Ranking Official</u>

Before turning to an analysis of the five *Buono* factors, the Court addresses the threshold, murky question of whether Mayor Dalina qualifies as a high-ranking official within the scope the *Morgan* doctrine.

Plaintiff contends that Mayor Dalina is not such an official. Plaintiff argues that, as a mayor of "a township with fewer than 50,000 residents," Mayor Dalina's responsibilities "are in no way comparable to those of a high-ranking federal official or even the mayor of a major city." ECF No. 43-1 at 9. Defendant reaches a different conclusion, positing that the protections of the *Morgan* doctrine apply to Mayor Dalina because Monroe is a large and complex municipality. Defendant counters with case law (albeit from outside of the Third Circuit) where courts have applied the *Morgan* doctrine to officials from public entities with smaller populations than Monroe. ECF 44 at 5-6.

"There is no hard and fast rule when it comes to applying *Morgan* to a particular government official." *Sensient Colors, Inc.*, 649 F. Supp. 2d at 321 (citing *Byrd v. District of Columbia*, 259 F.R.D. 1, 6 (D.D.C. 2009) ("no standard has been established for determining if an official is high-ranking")). "The determination is done on a case-by-case basis." *Id.* Here, there are at least two factors that weigh against applying the doctrine to Mayor Dalina. First, Monroe, as compared to Boston (*Bogan*), New York City (*Lederman*), and even Newark, New Jersey (*Buono*), is a relatively small municipality. This undercuts a key justification for application of the doctrine. As compared to a large city, it is far less likely that the demands of Monroe's litigation would require Dalina to "spend an inordinate amount of time tending to pending litigation." *Bogan*, 489 F.3d at 423. This, by itself, weighs against finding application of the doctrine appropriate here. Second, unlike in *Morgan*, there is no assertion that Mayor Dalina functioned in a "quasi-judicial" capacity such that taking

his deposition regarding the events underlying this lawsuit could be likened to an improper examination into deliberative process of a judge. In this Court's view, this makes a qualitative difference, and cuts against Monroe's argument for protection under the *Morgan* doctrine.

For these reasons, there is solid ground to conclude that Mayor Dalina would not qualify as a high-ranking official under *Morgan*. But the Court need not make such a finding because even assuming *arguendo* the *Morgan* doctrine applies to Mayor Dalina, the applicable *Buono* factors demonstrate that the Mayor's deposition should be permitted.

B. The *Buono* Factors Favor Allowing The Deposition To Proceed

Some other courts in this district, recognizing the overlapping nature of the five *Buono* factors, have considered the factors in groups. The court in *Sensient Colors*, for example, considered factors 1, 2, and 5 together, as these three are all directed to the key question of "whether the government official had personal involvement or knowledge relevant to the case." *Stevenson v. City of Newark*, 2024 WL 1526102, at *5 (D.N.J. Apr. 9, 2024) (citing *Sensient Colors*, 649 F. Supp. 2d at 322). Doing the same here, the Court finds that the Mayor did have personal involvement in underlying events and, therefore, has knowledge relevant to this case.

Plaintiff's allegations and briefing confirm this point. According to Plaintiff, a key element of Monroe's defense is that it was justified in excluding Landfill leachate from the local sewers, even after NJDEP found that reintroduction of the leachate into the local sewers was an acceptable method of disposal. ECF 43-1 at 6. Plaintiff

contends that Mayor Dalina's testimony is relevant to this defense because he had a direct role in matters central to this question. Plaintiff points out, for example, that Mayor Dalina possesses unique knowledge about certain events—including his own conversations with regulatory officials and residents—that cannot be obtained from other witnesses. Indeed, Plaintiff has highlighted the inability of other Township deponents to provide substantive testimony on certain questions, as several occasions they deferred to the Mayor's personal knowledge. *See* ECF No. 44, § IV(B).  Plaintiff thus provides this Court with the precise information that the *Lederman* and *Buono* courts found wanting.

Defendant does not appear to dispute that the Mayor had personal involvement in certain events underlying this case or that the Mayor has knowledge relevant to the case. But, as Defendant correctly points out, merely having relevant knowledge is not enough. Under the third *Buono* factor, the Court must examine whether Mayor Dalina's testimony is essential to Plaintiff's case. Defendant believes it is not, arguing that that Mayor's deposition testimony is not necessary and would be duplicative of other discovery.

Defendant first points to extensive document discovery, stating that document discovery in this case comprises of tens of thousands of documents from Defendant, BFI, and the third-party consultant hired by the DEP. According to Defendant, this discovery includes communications between the Mayor and regulatory bodies, and allegedly addresses the Township's decision-making regarding the leachate reintroduction plan. Further, Defendant contends expert testimony has addressed

the technical issues surrounding leachate management and that the documentary evidence shows that the Township's decision-making relied heavily on its expert consultant, Behram Turan. According to Defendant, this "record makes eminently clear that the Township and Mayor Dalina elected not to support BFI's reintroduction plan based upon the analysis of the Township's consultant, Behram Turan, and, further, that despite the Township's communications and analysis, that the DEP maintained its stated conclusion that reintroduction through the neighboring residential sewer lines was one of multiple technically acceptable solutions." ECF 44 at 8.

The Court is not persuaded. Neither the volume of document discovery nor Defendant's own interpretation of what this discovery purportedly shows undermines Plaintiff's claim that Mayor Dalina's deposition is necessary. In fact, Defendant's arguments underscore that a central issue in this case is Defendant's justification for excluding leachate from the Townships sewers. While documents and other testimony provide substantial background, they do not adequately substitute for Mayor Dalina's firsthand knowledge and participation—not only as Mayor but as Monroe Council President[2]—in events bearing on this question and the other issues in the case. For this reason, the Court finds that the third *Buono* factor—whether the testimony is essential to a party's case—is satisfied as well.

The final *Buono* factor—whether the deposition would significantly interfere

---

[2] At the time the leachate discharge to the Monroe's local sewers ceased in September 2020, Dalina was Monroe Council President and allegedly had conversations with then-Mayor Tamburro regarding the issue.

with the ability of the official to perform his government duties—does not counsel against allowing the deposition. There is no indication that sitting for a deposition will interfere in any way with the ability of Mayor Dalina to perform his duties as the Mayor of Monroe. While Defendant concludes its briefing with a request that the Court limit the scope of the deposition should the deposition be permitted to proceed, it provides no specific basis for that request. Rather, Defendant simply asks the Court to entertain further argument as to the scope of the deposition. That request is denied. Any arguments in this regard should have been raised and sufficiently briefed in Defendant's opposition.

IV. Conclusion and Order

For the reasons above, the Court finds that the deposition of Mayor Dalina should proceed. Accordingly,

**IT IS** on this 24th day of January, 2025,

**ORDERED** that Plaintiff's motion to compel [ECF No. 43] is GRANTED.

s/ Justin T. Quinn
**JUSTIN T. QUINN**
**United States Magistrate Judge**

--terminates ECF No. 43